280 So.2d 592 (1973)
Paul BLANCHARD, Plaintiff-Appellant,
v.
LIBERTY MUTUAL INSURANCE CO. et al., Defendants-Appellees.
No. 4195.
Court of Appeal of Louisiana, Third Circuit.
June 29, 1973.
*594 Armentor & Wattigny by Gerard B. Wattigny, New Iberia, for plaintiff-appellant.
Landry, Watkins, Cousin & Bonin by Jacob D. Landry, New Iberia, for defendant-appellee.
Before HOOD, CULPEPPER and MILLER, JJ.
HOOD, Judge.
This is a workmen's compensation suit instituted by Paul Blanchard against Zale Corporation, Levine's, Inc., and Liberty Mutual Insurance Company. Defendants filed exceptions of peremption and prescription, and reserving all rights under those exceptions, they also answered. The exceptions were referred to the merits, and after trial judgment was rendered by the trial court sustaining the exceptions and dismissing the suit. Plaintiff appealed.
After the appeal was taken, but before the record was lodged in this court, the plaintiff died from causes not related to the alleged accident, and his widow was substituted as party plaintiff in lieu of her deceased husband.
The principal issue presented is whether plaintiff is barred from maintaining this action by the prescription or peremption provided in LSA-R.S. 23:1209.
On February 21, 1967, Paul Blanchard was working for Zale Corporation or for Levine's, Inc., as assistant manager of a department store operated by Zale and known as Levine's Department Store, in New Iberia, Louisiana. While attempting to lift a 50 pound drum in the course of his employment on that date, he allegedly sustained a back injury, consisting of a herniated intervertebral disc at the L4-L5 level. He contends that that injury has totally and permanently disabled him from performing work of a reasonable character since that time.
Surgery was performed on Blanchard's back on April 27, 1967, for the correction of his disc injury. He was hospitalized for about seven days following that surgery, and he remained under treatment thereafter for a period of about three months. He returned to his regular employment on July 30, 1967, and he continued to work for defendants, Zale and Levine's, until about December 21, 1969, which was shortly before he submitted to surgery again.
An operation was performed on plaintiff's back in January, 1970, primarily for the removal of adhesions or scarring which had formed in the L4-L5 area following the surgical procedure which he had undergone more than two years earlier. He returned to his employment at Levine's on March 20, 1970, and continued to work there until his employment was terminated in May, 1970.
Workmen's compensation benefits were paid to plaintiff during his disability, from the date of his injury, February 21, 1967, until he returned to his employment on July 30, 1967. No further workmen's compensation benefits were paid to Blanchard from the last mentioned date until about two years and four months later, beginning two or three weeks before plaintiff submitted to surgery for the second time. Compensation benefits were then paid from December 21, 1969, until March 23, 1970. No compensation benefits have been paid to plaintiff since the last mentioned date. This suit was instituted on October 30, 1970.
More than three years elapsed, therefore, between the time compensation payments were originally terminated on July 30, 1967, and the time this suit was filed. More than two years elapsed between the time compensation payments were stopped on July 30, 1967, and the time payment of additional benefits was resumed on December 21, 1969.
The pertinent part of LSA-R.S. 23:1209 reads as follows:
"In case of personal injury (including death resulting therefrom) all claims for *595 payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter or unless within one year after the accident proceedings have been begun as provided in Parts III and IV of this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment." (Emphasis added).
Defendants contend that plaintiff is barred from maintaining this action by the provisions of LSA-R.S. 23:1209, because more than one year elapsed after July 30, 1967, without suit having been filed. They argue that the prescription or peremption provided in the cited section of the Revised Statutes accrued on July 30, 1968, or one year after compensation payments were stopped, that plaintiff's right to claim compensation for that injury ceased to exist on that date, and that the payment of additional benefits from December 21, 1969, to March 23, 1970, did not have the effect of reviving the lost cause of action, or of waiving prescription, or of interrupting the running of prescription or peremption which already had accrued.
Plaintiff contends that the running of prescription or peremption was interrupted by the payment of workmen's compensation benefits at various times after July 30, 1967, and by an agreement for the payment of compensation which he says he entered into with an agent of the defendant insurer in October or November, 1968.
Blanchard points out, first, that compensation benefits were paid from December 21, 1969, until March 23, 1970, and that this suit was filed within one year after the last mentioned date. He argues that the one year period provided in LSA-R.S. 23:1209 did not begin to run until March 23, 1970, and that this suit was timely filed since it was instituted within one year from that date. He contends that the trial judge erred, therefore, in sustaining the exceptions of prescription or peremption filed by defendants. We find no merit to this argument.
Our jurisprudence is settled that the delay provided in LSA-R.S. 23:1209, within which a right of action under the workmen's compensation act may be asserted, is one of peremption, rather than prescription, and that after that limit of time expires the cause of action no longer exists. Guillory v. Avoyelles Ry. Co., 104 La. 11, 28 So. 899 (1900); Brister v. Wray Dickinson Co., 183 La. 562, 164 So. 415 (1935); Heard v. Receivers of Parker Gravel Co., 194 So. 142 (La.App. 2 Cir. 1938); Morgan v. Rust Engineering Co., 52 So.2d 86 (La.App.Orl.1951).
The case of Guillory v. Avoyelles Ry. Co., supra, did not involve a claim under the workmen's compensation act, but the language used by the court is appropriate here. Our Supreme Court said in that case:
"When a statute creates a right of action, and stipulates the delay within which that right is to be executed, the delay thus fixed is not, properly speaking, one of prescription, but it is one of peremption. Statutes of prescription simply bar the remedy. Statutes of peremption destroy the cause of action itself. That is to say, after the limit of time expires the cause of action no longer exists; it is lost." (Emphasis added).
The issue presented in Brister v. Wray Dickinson Co., supra, was almost identical to the one which is before us here. In Brister, the payment of workmen's compensation benefits was discontinued for a period of 15 months, and then payments were resumed for several more months. Suit was instituted promptly after the payment of benefits was discontinued the second time. The Supreme Court, after quoting from Guillory v. Avoyelles Ry. Co., supra, held that plaintiff was barred by peremption *596 from maintaining the action because of the 15 month delay. The court said:
"It therefore follows that, when a period of more than 15 months elapsed in which no payments were made, and no agreement was entered into, the right of plaintiff to recover under the Compensation Law was, in the words of the statute, `forever barred'; the cause of action no longer existed; it was lost. The statute clearly is one of peremption."
We think the rule applied in Brister governs in this case. We conclude, therefore, that since a period of more than one year elapsed between the time the payment of compensation benefits was discontinued on July 30, 1967, and the time this suit was filed, plaintiff is barred from maintaining this action, by the peremption provided in LSA-R.S. 23:1209, unless the evidence shows that the running of peremption was interrupted by the payment of other compensation benefits within a year after that date, or that the parties agreed upon the payments to be made within that one year period.
Plaintiff contends that while he was working for defendant Zales, between July 30, 1967, and the time his employment was terminated in May, 1970, several payments of "sick leave benefits" were made to him in lieu of workmen's compensation benefits. He takes the position that each of these payments must be construed to be a payment of compensation, and that each one interrupted the running of the peremption provided in LSA-R.S. 23:1209.
Since defendants have pleaded prescription or peremption and have shown that more than one year elapsed between the time compensation payments were discontinued on July 30, 1967, and the time this suit was filed, the burden of proof is on plaintiff to show that the running of prescription or peremption was interrupted. Black v. Ethyl Corporation, 236 So.2d 607 (La.App. 1 Cir. 1970); Gulling v. E. I. Du Pont de Nemours & Co., 228 So.2d 750 (La.App. 4 Cir. 1969).
The evidence shows that before the accident occurred the defendant employer had established a sick leave plan for all employees, whereby each employee received up to 96 hours of "sick leave" per year. Under that plan, the employer would not pay sick leave benefits to the employee for the first day that he missed work, but it would pay him sick leave benefits for the second day he failed to show up and for each subsequent consecutive day on which he was absent from work, until all of the sick benefits had been used up. The employee made no contributions to that plan, and he was entitled to receive and collect his accumulated sick leave benefits under the plan for the days he was absent from work for any reason, whether he was sick or not.
Plaintiff concedes that he worked regular shifts after he returned to his job, that he performed all of the duties of his employment, that he earned his salary and that he was given no special treatment of any kind, although he said that he suffered pain in his back while working. He missed several days of work after July 30, 1967, however, and he received several payments of sick leave benefits.
At the trial a number of time sheets of Levine's Department Store were introduced in evidence, showing the names of the employees who were absent from work, the dates on which they were absent, and whether or not they were paid for the days they failed to work. Some of these time sheets were introduced by plaintiff, and some were introduced by defendants. It appears that all parties had access to these time sheets, and plaintiff acknowledged that he was thoroughly familiar with them, since he had worked for several years as assistant manager of the store.
The time sheet for December 20, 1967, shows that Blanchard was absent on that date, but it was marked "excused absence, paid." The time sheet for the preceding day was not introduced in evidence, so the record does not indicate whether plaintiff's *597 absence on December 20 was his second consecutive day to miss work.
The rest of the time sheets which were filed show that in every other instance where Blanchard received pay for days he did not work, he received no payment for the first day he missed, and he was paid only for the second day he was absent and for each consecutive day of absence thereafter, all in accordance with Levine's sick leave plan.
Plaintiff testified that except for the first payment made to him on December 20, 1967, all other payments of sick leave benefits which he received were paid to him in complete accord with the company policy of paying such benefits, and that he was treated like all other employees were treated under the company's sick leave plan, whether they had a compensation claim or not.
Plaintiff argues that the payments which were made to him as sick leave benefits should be treated as payments in lieu of compensation, and that each such payment thus interrupted the running of peremption. He bases that claim on the cases of Sharp v. Esso Standard Oil Company, 72 So.2d 601 (La.App. 1 Cir. 1954); and Rimbolt v. City of New Orleans, 150 So.2d 871 (La.App. 4 Cir. 1963).
We have concluded that none of the payments made to plaintiff between July 30, 1967, and December 21, 1969, were made in lieu of compensation benefits, and that none of said payments interrupted the running of the prescription or peremption provided in LSA-R.S. 23:1209.
We think the law was correctly stated in France v. City of New Orleans, 92 So.2d 473 (La.App.Orl.1957), as follows:
"The City of New Orleans is not entitled to a credit for the amount of the sick allowance plaintiff received as this cannot be considered the equivalent of workmen's compensation benefits. The City has in vogue a system whereby its employees accumulate, commensurate with the tenure of their employment over a period of time, an annual amount of `sick leave' and our thought is that when an incapacitated employee receives the benefits thereof he is only being paid that which he has already earned by virtue of past services rendered to the employer."
In Hammond v. Sewerage and Water Board of New Orleans, 204 So.2d 699 (La.App. 4 Cir. 1967), the court said:
"This court has decided in France v. City of New Orleans, 92 So.2d 473 (La. App. Orleans 1957), that payment under a sick leave system will not be credited against a compensation award. Sick leave payments are benefits which the employee has already earned by virtue of past services rendered to his employer."
And, in Guerrera v. City of New Orleans, 212 So.2d 223 (La.App. 4 Cir. 1968), the court held that "... sick leave benefits are payments earned by the employee for past services rendered and when he becomes disabled none of such benefits can be deducted from or credited to workmen's compensation." See also Johnson v. Cabot Carbon Co., 75 So.2d 389 (La.App. 1 Cir. 1954); Wallace v. Remington Rand, Inc., 76 So.2d 87 (La.App. 2 Cir. 1954); Richard v. Liberty Mutual Insurance Company, 188 So.2d 432 (La.App. 3 Cir. 1966).
We distinguish the cases relied on by plaintiff. In Sharp v. Esso Standard Oil Company, supra, the court found that "the same plan which provided the sick benefits provided for disability benefits from the accident," and for that reason the payments were considered as having been made in lieu of compensation. No such circumstance exists in the instant suit. In Rimbolt v. City of New Orleans, supra, the plaintiff was paid his full salary for several years after he became completely disabled, although he performed no duties. The payroll records kept by the employer showed that "by agreement" plaintiff at *598 various times was carried as being on sick leave, on annual leave, on "full pay for compensatory time," and "return to duty with full pay." The court held that there was an "implied agreement" that the full salary payments were in lieu of compensation. No such agreement, either actual or implied, existed in the instant suit.
The evidence fails to show that the one payment made to plaintiff on December 20, 1967, was made pursuant to an implied agreement that it was in lieu of compensation, as contended by plaintiff. But even if we consider that payment as having interrupted the running of prescription, more than one year elapsed after that date without any other interruption. It is immaterial, therefore, whether the December 20, 1967 payment was or was not intended as a payment of compensation.
Our conclusion is that the payments of sick leave benefits made to plaintiff after July 30, 1967, were not made in lieu of compensation, and that they did not interrupt the running of prescription or peremption.
Plaintiff contends next that the trial judge erred in sustaining defendants' exceptions of prescription as to his claim for excess medical payments. We find no error in that part of the trial court's judgment.
Our jurisprudence is settled that medical expenses do not constitute a part of "compensation," that a demand for medical expenses can be independently asserted, and that such a demand is controlled by the prescription or peremption provided in LSA-R.S. 23:1209. Brown v. Travelers Ins. Co., 247 La. 7, 169 So.2d 540 (1964). The "payment" necessary to interrupt prescription of a claim for medical expenses is a medical payment. Prejean v. Travelers Insurance Company, 234 So.2d 527 (La. App. 3 Cir. 1970).
In the instant suit more than one year elapsed between the medical payment made on February 4, 1969, and the one made on March 10, 1970. The trial judge thus correctly determined that plaintiff's right to claim medical expenses was lost by prescription.
Plaintiff contends, finally, that the running of prescription was interrupted by an agreement entered into between him and Paul Holland, an adjuster for defendant Liberty Mutual Insurance Company, in October or November, 1968, to the effect that the insurer would pay compensation benefits to plaintiff when he submitted to the surgery which had been recommended.
The trial judge found that no such agreement was entered into. The only evidence produced which tends to show that such an agreement existed was the testimony of plaintiff. Although Mr. Holland did not testify, the claims supervisor of the defendant insurer testified that no such commitment was made until 1970, long after plaintiff's right to claim compensation and medical payments had been lost by prescription.
The conclusions of the trial judge as to facts, particularly in those instances which involve a determination of the credibility of witnesses who appear before him, are entitled to great weight and will not be disturbed unless found to be clearly erroneous. We cannot say that the trial judge erred in finding that no agreement was entered into between plaintiff and Mr. Holland, as contended.
Our ultimate conclusion is that the judgment of the trial court is correct.
The judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.